FILED
12/12/2023
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 1, 2023

**ARTHUR A. ALLEN v. HEATHER S. ALLEN**

**Appeal from the Chancery Court for Washington County**
**No. 20-DM-0387    Suzanne S. Cook, Judge[1]**
_____

**No. E2023-01660-COA-T10B-CV**
_____

This is an interlocutory appeal as of right, pursuant to Tenn. Sup. Ct. R. 10B, filed by Arthur A. Allen ("Father"), seeking to recuse the trial judge in this case. Having reviewed the petition for recusal appeal filed by Father, and finding no error, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CARMA DENNIS MCGEE and JEFFREY USMAN, JJ., joined.

Crystal Jessee, Greeneville, Tennessee, for the appellant, Arthur A. Allen.

Dustin Jones, Johnson City, Tennessee, for the appellee, Heather S. Allen.

**OPINION**

**Background**

The underlying divorce proceedings in the Washington County Chancery Court (the "Trial Court") involve custody of minor children and development of a residential parenting schedule that is in the children's best interest. This matter was scheduled initially to be heard by Chancellor John C. Rambo; however, due to a scheduling conflict, Judge Suzanne Cook presided over the evidentiary hearing that occurred on December 12, 2022.

_____
[1] Sitting by Interchange.

The December 12, 2022 transcript reflects that at the beginning of the trial, Judge Cook informed the parties that she previously had met the mother, Heather S. Allen ("Mother"), while participating in "theater things" but stated that she had never represented Mother and had no knowledge of what had transpired in these proceedings. Judge Cook informed the parties that they had the right to discuss the connection between Mother and Judge Cook with their respective counsel outside Judge Cook's presence regarding whether the parties wished for Judge Cook to recuse herself. According to Judge Cook, she "wanted to put that on the record so that in case there was any disagreement on that we would know it now before we started." Neither parent requested for Judge Cook to recuse herself at that time.

The December 12, 2022 hearing involved developing the residential parenting schedule. The parties agreed that the Child would relocate to Georgia and attend public school in Father's school district. Mother also stated her intent to move to Georgia to be with the children. During the hearing, the Trial Court declined to allow the parties' then twelve-year-old child to testify. Father also alleged that the Trial Court appeared to be disregarding the parties' agreement announced at the beginning of trial. This trial resulted in the parties coming to an agreement resolving all issues before the Trial Court at that time. The agreed parenting plan designated the parents as joint primary residential parents with equal parenting time. The Trial Court entered an order approving the parenting plan agreed to by the parties as being in the best interest of the children. Neither party appealed this judgment.

After the December 2022 trial, Father filed a complaint against Judge Cook with the Tennessee Board of the Judiciary. The complaint was subsequently dismissed. In February 2023, Mother filed a motion seeking criminal contempt due to Father's alleged interference with her parenting time under the permanent parenting plan and failure to seek her agreement with regard to joint decisions. The parties appeared for a hearing with regard to Mother's criminal contempt allegations in front of Judge Cook. However, because Father had only recently been served with the Mother's motion for criminal contempt, the hearing was continued.

In May 2023, Father filed a petition to modify the permanent parenting plan to designate Father the primary residential parent and to decrease Mother's parenting time with the children. Father also filed motions for civil contempt and criminal contempt, both alleging that Mother failed to pay her pro rata share of expenses for the children. A hearing on the post-trial contempt motions is scheduled for December 12, 2023, which was originally set to be heard by Chancellor Rambo because Father stated he would not agree to have Judge Cook preside over the matter. However, the parties received notice that Chancellor Rambo had assigned the matter to Judge Cook to conduct the hearing.

On October 31, 2023, Father filed his first motion to recuse. In his motion, Father alleged bias on behalf of Judge Cook due to her "closeness" with Mother. According to

Father, he was unaware of the extent of the "closeness" between Judge Cook and Mother until after the December 2022 trial. Father alleged that Mother and Judge Cook had performed together at the theater and attached social media posts reflecting the connection between Mother and Judge Cook. Father attached cast lists for "Camelot" and "Harvey," each containing both Mother's and Judge Cook's names, as well as a photograph from October 2016 showing Mother and Judge Cook standing next to each other posing for a photo in a group of five people in what appears to be a theater cast photo. Father also attached screenshots from a social media platform reflecting that Mother and Judge Cook follow each other on this platform. Additionally, Father alleged that Mother had spoken with Judge Cook for a consultation during the divorce litigation. Moreover, Father alleged that Judge Cook had spoken to at least one of the children while in Mother's presence during the time Mother and Judge Cook were performing together.

The Trial Court entered an order denying the recusal motion, finding that Father's recusal motion failed to comply with Tenn. Sup. Ct. R. 10B § 1.01 due to several procedural defects, including that the motion was not signed by Father, that it was not sworn to by Father, that it did not contain either an affidavit under oath or declaration under penalty of perjury based on personal knowledge, and that the motion failed to affirmatively state that the motion was not being presented for any improper purpose.[2] The Trial Court held that these procedural defects were fatal and denied the motion. However, the Trial Judge proceeded to address the allegations of bias made against her and stated as follows with regard to those allegations:

> The transcript from December 12, 2022 is clear that the undersigned initiated and identified to counsel and the parties an acquaintance with Mother from many years ago. The undersigned initiated the opportunity for counsel and the parties to discuss outside of the Court's presence the issue of recusal. Prior to the hearing, the Court asked both counsel to approach the bench during which the Court disclosed that years ago the Court was acquainted with Wife/Mother through a community theater, and that Wife/Mother had contacted the undersigned about representing her (without consultation), which the undersigned did not. The Court also explained to

---

[2] Tenn. Sup. Ct. R. 10B § 1.01 provides as follows:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal. . . . The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

- 3 -

both counsel that it had no knowledge whatsoever of any prior proceedings between the parties nor the details of the proceeding to be heard on December 12, 2022. Thereafter, the attorneys exited the courtroom with their clients, had discussions outside of the Court's presence, and returned to say they and their clients wished to proceed. The hearing began,

> And I need to put on the record that I, before this started, I had discussed with both counsel that I knew nothing about the facts of this case. I have never met Mr. Allen. I have met Ms. Allen during some theater things, but I have never represented her and l have no personal knowledge of what's taken place. And I discussed with both lawyers. to discuss with you, that you have the right to discuss outside my presence whether you wanted me to recuse myself or not. And both your counsel has said that you wish to proceed. So, I wanted to put that on the record so that in case there was any disagreement on that we would know it now before we started.

No disagreement was expressed. No request to continue was made. The hearing proceeded over several hours, but before the conclusion of the same, the attorneys and their clients announced they had reached resolution.

About four weeks after the hearing, Father complained in mid-January 2023 to the Board of Judicial Conduct ("the Board"). The complaint was dismissed by the Board. Father's present motion echoes his complaint(s) to the Board, including the assertion of "closeness" between Mother and the undersigned based upon seven years ago being in a community theater show "Camelot" in late September — early October 2016 and a backstage dressing room photo from the show posted contemporaneously seven years ago by a third party who "tagged" Mother and the undersigned.

Father now additionally (mis)relies upon an exhibit to his motion showing a cast announcement for a second . . . community show, "Harvey". Father's exhibit omits the cast announcement was publicized on February 21, 2019 for the show dates of May 10-26, 2019. However, Father and his counsel appear to be uninformed that the undersigned did not actually perform in "Harvey". The theater's webpage documents the same[.]

The Court calls to Father and his counsel's attention that about two weeks after the "Harvey" casting announcement, the undersigned's then fifteen year old son was unexpectedly admitted to the hospital on March 9, 2019, then diagnosed with a rare and extremely aggressive form of cancer resulting in the undersigned and her son being emergently relocated within mere hours of diagnosis by medical jet from Johnson City, Tennessee to

- 4 -

Memphis, Tennessee as patient(s) of St. Jude Children's Research Hospital for inpatient and on campus treatment for several months, and thereafter an ensuing almost three years of highly intensive treatment between St. Jude's in Memphis and the St. Jude Affiliate Clinic and hospital in Johnson City, Tennessee.

Next, Father raises as grounds that 1) he does not agree with the Court's rulings during the hearing on December 12. 2022, and 2) he filed a dismissed complaint against the undersigned. Neither of these warrant recusal.

Father attaches the transcript of the December 12, 2022 hearing. The transcript reflects cordial exchanges between the Court and both counsel, sustaining and overruling objections for and against both parties, significant efforts to understand, clarify, and analyze all of the issues, admonishing Mother's counsel three times to let Father finish his answers (protecting Father's right to testify without interruption), allowing Father's counsel to fully argue the points she wanted to advance, Father's counsel both agreeing and disagreeing with various rulings during the hearing, the Court complimenting the lawyers and the parties, and the Court proceeding to complete the trial and hear from all witnesses before the parties requested an opportunity to talk outside the courtroom, and then announced an agreement.

(Internal citations and footnote omitted.) As such, the Trial Judge found that Father's disagreement with the Trial Court's rulings and the Board complaint filed against Judge Cook by Father were insufficient to warrant recusal. In her order denying the recusal motion, the Trial Judge concluded that despite the procedural defects, the Trial Court had addressed Father's allegations of bias, "including his continued mischaracterization of 'closeness' based upon an acquaintanceship from seven years ago which was limited in time and scope." The Trial Judge assured that she had presided impartially and without bias over the December 2022 trial and that there was no reasonable appearance of bias sufficient to question the Trial Judge's impartiality.

Subsequently, Father filed his second motion to recuse Judge Cook. The allegations in the second motion are essentially identical to the allegations of bias in the previous motion to recuse, except that Father attached two affidavits to the second recusal motion that were inadvertently omitted from the first motion — one affidavit executed by Father and the second executed by the parties' now thirteen-year-old son. The affidavit executed by the child states that he overheard Mother speaking negatively about Father while in a group setting at the theater with Judge Cook present.

On November 14, 2023, the Trial Judge entered an order denying the second recusal motion upon her determination that the second motion failed to allege facts or grounds that

were substantially different from the first recusal motion and that it also contained procedural defects. With regard to the procedural defects, the Trial Judge explained that the second recusal motion did not contain either an affidavit or declaration under penalty of perjury based on personal knowledge and that the motion failed to state that it was not presented for any improper purpose as required by Rule 10B. The order on the second motion incorporated by reference the Trial Judge's order denying the first recusal motion, which included the Trial Judge's ruling on the substantive allegations of bias. Pursuant to Tenn. Sup. Ct. R. 10B, Father timely filed an interlocutory appeal as of right from Judge Cook's order denying recusal.

## **Discussion**

It is unclear which denial of his recusal motions Father seeks to appeal; however, we will address the Trial Judge's denial of both recusal motions as the substantive allegations are the same in both motions. We have determined in this case after a review of the petition and supporting documents submitted with the petition, that an answer, additional briefing, and oral argument are unnecessary to our disposition because the record provided by Father does not demonstrate error by Judge Cook with regard to the denial of Father's two motions for recusal. As such, we have elected to act summarily on this appeal in accordance with sections 2.05 and 2.06 of Rule 10B. *See* Tenn. Sup. Ct. R. 10B, § 2.05 ("If the appellate court, based upon its review of the Petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court."); § 2.06 ("An accelerated interlocutory appeal shall be decided by the appellate court on an expedited basis. The appellate court's decision, in the court's discretion, may be made without oral argument.").

We review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B § 2.01. "The party seeking recusal bears the burden of proof, and 'any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.'" *Neamtu v. Neamtu*, No. M2019-00409-COA-T10B-CV, 2019 WL 2849432, at *2 (Tenn. Ct. App. July 2, 2019), *no appl. perm appeal filed*, (quoting *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015), *no appl. perm. appeal filed*). As this Court explained in *Neamtu*:

> The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward

with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke* [*v. Duke*], 398 S.W.3d [665,] 671 [(Tenn. Ct. App. 2012)] (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). **"The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'"** *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

*Neamtu*, 2019 WL 2849432, at *3 (quoting *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), *no appl. perm. appeal filed.*) (emphasis in original).

The Trial Judge denied the recusal motions based on procedural grounds and on their merits. We first address the Trial Court's denial of the recusal motions based on the merits of the allegations of bias against Judge Cook. In his Rule 10B petition to this Court, Father argues that Judge Cook has demonstrated bias in favor of Mother and against Father due to the "closeness" of the relationship between Mother and Judge Cook. Prior to hearing evidence at trial in December 2022, Judge Cook sufficiently disclosed that she had met Mother while participating in "theater things." Judge Cook informed the parties that they had the right to discuss the connection between Mother and Judge Cook with their respective counsel outside Judge Cook's presence regarding whether the parties wished for Judge Cook to recuse herself. Judge Cook did not acknowledge a conflict of interest but invited the parties to file recusal motions if they so desired. Neither parent requested for Judge Cook to recuse herself at that time. In fact, it was only after Father received unfavorable rulings during the December 2022 trial that he claimed bias by Judge Cook due to the alleged close relationship between Mother and Judge Cook. As Judge Cook explained, the theatrical play Mother and Judge Cook both participated in had occurred in 2016, nearly seven years before the motions to recuse filed by Father. According to Judge Cook, the relationship was limited in time and scope. Although Mother had spoken to Judge Cook informally regarding representing her in the divorce proceedings, the Trial Judge stated that she declined such representation without a consultation. Judge Cook further denied having knowledge regarding the divorce proceedings. The burden of proof is on Father, and Father has failed to present evidence demonstrating Judge Cook and Mother had a close relationship or that such relationship had continued following the play in which they performed together in 2016.

Furthermore, Father did not have an issue with the connection between Judge Cook and Mother until Judge Cook ruled against him on certain issues during the December 2022 trial. According to Father, the Trial Judge appeared to deviate from the parties' pre-trial agreements and denied Father's request to allow the parties then twelve-year-old child to testify. We note that the only order this Court may review as to its correctness or merits in a Tenn. Sup. Ct. R. 10B recusal appeal is the trial court's order denying a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("Pursuant to [Tenn. Sup. Ct. R. 10B], we may not review the correctness or merits of the trial court's other rulings . . . ."). Therefore, we do not review these rulings by the Trial Court for their correctness but only as they relate to whether Judge Cook has demonstrated bias in this proceeding.

"[P]reservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see also Offutt v. United States*, 348 U.S. 11, 14 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Tenn. Sup. Ct. R. 10 requires a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." *See also Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (noting that recusal is required, even if a judge subjectively believes he or she can be fair and impartial, whenever "'the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias'" (quoting *Bean*, 280 S.W.3d at 805)).

The terms "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party"; however, "[n]ot every bias, partiality, or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* "If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.* That said, "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also Alley*, 882 S.W.2d at 821. In fact, "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley*, 882 S.W.2d at 821; *see also State v. Reid*, 313 S.W.3d 792, 816 (Tenn. 2006). In other words, "if the bias is alleged to stem from events occurring in the course of the litigation, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, *3 (Tenn. Ct. App. Feb. 11, 2014).

Furthermore, "a judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, *2 (Tenn. Ct. App. May 14, 2008), *no appl. perm. appeal filed*. This is true because "'[a] judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted.'" *Id*. at *2 (quoting *Mass v. McClenahan*, No. 93 Civ. 3290 (JSM), 1995 WL 106106, *1 (S.D.N.Y. Mar. 9, 1995)). Recusal based upon an asserted appearance of bias or prejudice "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *Id*. at *2 (quoting *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

Adverse rulings and a litigant's resultant unhappiness with the rulings, even if the Trial Court's rulings are erroneous and numerous, are insufficient, without more, to justify recusal. Additionally, Father has failed to demonstrate that Judge Cook has a close relationship with Mother such that would create an appearance of bias. Furthermore, the fact that Father filed a judicial complaint with the Board of the Judiciary against Judge Cook without any additional evidence of actual bias or partiality is insufficient to demonstrate an appearance of impropriety or bias against Father. *See Denney ex rel. Doghouse Computers, Inc. v. Rather*, No. M2022-01743-COA-T10B-CV, 2023 WL 316012, at *4 (Tenn. Ct. App. Jan. 19, 2023) ("[R]ecusal is not required simply because a party has filed a complaint against a judge."). As such, Father has failed to produce evidence that would prompt a person of ordinary prudence in Judge Cook's position, with knowledge of all facts known to Judge Cook, to find a "reasonable basis for questioning the judge's impartiality." *See Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023). Father failed to satisfy his burden of proof. Therefore, we find no error in Judge Cook's denial of Father's motions for recusal. Based on our holding regarding the merits of the recusal motions, the Trial Judge's denial based on various procedural defects is pretermitted as moot.

## Conclusion

For the foregoing reasons, we affirm the Trial Judge's denial of the motions for judicial recusal. Arthur A. Allen is taxed with the costs of this appeal, for which execution may issue. This case is remanded for further proceedings.

_____
D. MICHAEL SWINEY, CHIEF JUDGE